DENNIS, Circuit Judge,
joined by PATRICK E. HIGGINBOTHAM, W. EUGENE DAVIS, WIENER, BENAVIDES, and CARL E. STEWART, Circuit Judges,
dissenting in part and specially concurring in part:
I respectfully disagree with the majority’s decision to (1) overrule our long-stand *419 ing circuit precedents of United States v. Mmahat, 106 F.3d 89 (5th Cir.1997) and United States v. Asset, 990 F.2d 208 (5th Cir.1993),[1] which held that a restitution *420 order, because it is compensatory rather than punitive, does not abate with the defendant’s criminal conviction and punishment when he dies while his appeal is pending; and (2) judicially create a rule, contrary to federal statutes and common law, that a judgment requiring a criminal defendant to make restitution to his victims also abates upon his death.
The well reasoned decisions in Mmahat and Asset established the sound and just majority rule that, when a person adjudged guilty of a crime dies while his appeal is pending, (1) the trial court’s restitution order requiring him to compensate his victims for the harm done them by his crimes does not abate or disappear, because it is compensatory rather than penal; (2) the restitution order continues to have effect as a civil judgment enforceable against his estate; but (3) his estate may move to be substituted in his place and pursue the appeal, which, if successful, will require that the restitution judgment be cancelled. See Mmahat, 106 F.3d at 93.
The majority now holds that, when a criminal defendant dies during his appeal, the restitution judgment immediately abates and is voided, leaving his estate the windfall of any fruit of his crime, and requires that his victims go uncompensated for their harm, and leaves in doubt whether they must turn over to the criminal defendant’s estate any restitution previously received. See Majority Op. at 412, 418.
1.
The majority’s decision conflicts with the policy and provisions of the Mandatory Victims Restitution Act of 1996 (MVRA) and the Victim and Witness Protection Act of 1982 (VWPA)[2] and undermines the Congressional objective of requiring Federal criminal defendants to pay compensatory restitution to the identifiable victims of their crimes.
Congress enacted the VWPA in 1982, 18 U.S.C. § 3663 (1982), to authorize, but not require, district courts, within their discretion, to order restitution to victims of criminal conduct. Id. § 3663(a)(1)(A).[3] In de *421 termining whether to order restitution, and how much, the court was required to consider, along with the loss sustained by each victim, the financial resources and family needs of the defendant. Id. § 3663(a)(1)(B). Prior to today’s decision herein, a majority of circuits, including this Fifth Circuit, had held that restitution orders under the VWPA were compensatory and therefore non-abatable. See United States v. Asset, supra; United States v. Mmahat, supra; see also United States v. Christopher, 273 F.3d 294, 299 (3rd Cir.2001); United States v. Johnson, 1991 WL 131892, 1991 U.S.App. LEXIS 17204 (6th Cir.1991) (unpublished); United States v. Dudley, 739 F.2d 175 (4th Cir.1984). But see United States v. Logal, 106 F.3d 1547, 1552 (11th Cir.1997) (holding that restitution orders are punitive and should abate with the death of a criminal defendant during his appeal).
In 1996, Congress enacted the MVRA, 18 U.S.C. § 3663A (1996), which mandates restitution for certain crimes and clearly indicates that such restitution is compensatory and non-abatable. The MVRA superseded in part the VWPA, with respect to the designated crimes, Id. § 3663A(c), and, as its name indicates, mandatorily requires that, in sentencing a defendant convicted of, inter alia, “an offense against property, including any offense committed by fraud or deceit,” the court “shall order ... that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim’s estate.” Id. §§ 3663A(c), 3663A(a).
Further, the MVRA amended the VWPA to provide that restitution orders under the VWPA shall be issued and enforced in accordance with § 3664, which sets forth the enforcement provisions of the MVRA. See § 3663(d). (“An order of restitution made pursuant to this section shall be issued and enforced in accordance with Section 3664.”). In each restitution order under the MVRA and the VWPA, as amended, the court “shall order restitution to each victim in the full amount of each victim’s losses as determined by the court and without consideration of the economic circumstances of the defendant.” Id. § 3664(f)(1)(A).[4]
Under the MVRA and the VWPA, as amended, the court’s restitution order expressly creates a property right for the victim or his estate which has the effect of a civil judgment against the criminal defendant or his estate. A restitution order is a heritable,[5] assignable,[6] civil judgment “in favor of such victim”,[7] and, when prop *422 erly recorded, “shall be a lien on the property of the defendant ... in the same manner ... as a judgment of a court of general jurisdiction....”[8] The judgment of restitution carries potential civil effects of joint and several liability, res judicata or collateral estoppel, and subrogation: When plural defendants contribute to the loss of the victim the court may make each defendant liable for payment of the full amount of restitution.[9] A defendant ordered to make restitution is estopped from denying the essential allegations of the offense in subsequent civil proceedings.[10] An insurer or other person who compensates the victim for loss covered by a restitution order may to the extent of the payment be sub-rogated to the victim’s right against the restitution debtor.[11]
While the foregoing provisions demonstrate that Congress carefully designed the restitution ordered under the MVRA and the VWPA, as amended, to be a compensatory remedy for crime victims, other provisions of § 3664 protect the defendant from possible punitive effects. In case of property loss, the order may require only a return of the property or payment equal to the value of the property.[12] In case of bodily injury, the order may compensate the victim only for specified losses, e.g., medical and therapeutic expenses, lost income, funeral expenses, child care expenses, transportation expenses, and expenses related to the prosecution.[13]
Thus, the court cannot order restitution for compensatory damages related to pain, suffering, mental or emotional distress or for punitive damages. Additionally, any amount paid to a victim under a restitution order shall be reduced by the victim’s recovery of compensatory damages for the same loss in civil proceedings.[14]
In sum, an order of restitution under the MVRA or the VWPA, as amended, is expressly compensatory, non-punitive, and equivalent to a civil judgment against a criminal defendant requiring that he compensate his victims for the specified elements of the harm done to them by his offenses. Consequently, the majority’s decision conflicts with the statutory scheme by treating the restitution order as abata-ble and therefore impliedly punitive. The decision thereby divests the victims of vested rights established by the restitution order as a civil judgment. On the other hand, Mmahat and Asset, which the majority overrules, are fully consistent with the MVRA, the VWPA, as amended, and their objectives. The majority’s decision plainly clashes with and undermines the Congressional policy implemented by the VWPA and the MVRA.
2.
The majority opinion disregards or refuses to follow the well reasoned opinions of other Circuits that carefully analyze the VWPA and the MVRA and conclude that restitution orders under them are compensatory and do not constitute criminal pun *423 ishment for ex post facto or abatement purposes.[15]
Chief Judge Posner, in United States v. Bach, 172 F.3d 520 (7th Cir.1999), succinctly and persuasively stated the reasons that MVRA restitution orders are compensatory, rather than criminal punishment, and therefore cannot run afoul of the ex post facto prohibition.[16] He explained that *424 the MVRA is not penal but is functionally a compensatory torts statute:
The Act requires the court to identify the defendant’s victims and to order restitution to them in the amount of their loss. In other words, definite persons are to be compensated for definite losses just as if the persons were successful tort plaintiffs. Crimes and torts frequently overlap. In particular, most crimes that cause definite losses to ascertainable victims are also torts: the crime of theft is the tort of conversion; the crime of assault is the tort of battery — and the crime of fraud is the tort of fraud. Functionally, the Mandatory Victims Restitution Act is a tort statute, though one that casts back to a much earlier era of Anglo-American law, when criminal and tort proceedings were not clearly distinguished. The Act enables the tort victim to recover his damages in a summary proceeding ancillary to a criminal prosecution. We do not see why this procedural innovation, a welcome streamlining of the cumbersome processes of our law, should trigger rights under the ex post facto clause. It is a detail from a defrauder’s standpoint whether he is ordered to make good his victims’ losses in a tort suit or in the sentencing phase of a criminal prosecution. It would be different if the order of restitution required the defendant to pay the victims’ losses not to the victims but to the government for its own use and benefit; then it would be a fine, which is, of course, traditionally a criminal remedy.
Bach, 172 F.3d at 522-23 (internal citations omitted)(emphasis added).
The Seventh Circuit’s decision in United States v. Newman, 144 F.3d 531 (7th Cir.1998), provides further analysis demonstrating that restitution under the MVRA does not qualify as criminal punishment. (1) “Restitution has traditionally been viewed as an equitable device for restoring victims to the position they had occupied prior to a wrongdoer’s actions.” 144 F.3d at 538 (citing Restatement of Restitution (introductory note) (1937)). “It is separate and distinct from any punishment visited upon the wrongdoer and operates to ensure that a wrongdoer does not procure any benefit through his conduct at others’ expense.” Id. (Citing 1 George E. Palmer, The Law of Restitution § 1.1, at 5 (1978)); (2) The non-punitive character of restitution had been recognized by the Seventh Circuit and other courts in previous cases. Id. 538-39 (Citing United States v. Black, 125 F.3d 454, 467 (7th Cir.1997) (restitution under the Child Support Recovery Act of 1992 was not punishment); United States v. Hampshire, 95 F.3d 999, 1006 (10th Cir.1996) (same); United States v. Arutunoff, 1 F.3d 1112, 1121 (10th Cir.1993) (The VWPA’s purpose is not to punish defendants but to make victims whole to the extent possible); United States v. Rochester, 898 F.2d 971, 983 (5th Cir.1990) (same)); (3) The nature of the restitution order authorized by the VWPA or the MVRA is not a punitive sanction when analyzed under the factors set forth by Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) for deciding whether a statutory scheme was so punitive in purpose or effect as to transform what was intended as a civil remedy into a criminal penalty. See Newman, 144 F.3d at 540 (citing Kansas v. *425 Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); Hudson v. United States, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)).
Accord: United States v. Nichols, 169 F.3d 1255 (10th Cir.1999); United States v. Arutunoff, 1 F.3d 1112, 1121 (10th Cir.1993)(“The VWPA’s purpose is not to punish defendants or to provide a windfall for crime victims but rather to ensure that victims, to the greatest extent possible, are made whole for their losses.”)(citing United States v. Rochester, 898 F.2d 971, 983 (5th Cir.1990)).
For similar reasons, the majority of circuits that have addressed whether MVRA or VWPA restitution orders are abatable, decided that, because such orders are compensatory rather than punitive, the death of the defendant during appeal does not cause them to abate. See United States v. Christopher, 273 F.3d 294, 298 (3rd Cir.2001) (“To absolve the estate from refunding the fruits of the wrongdoing would grant an undeserved windfall ... abatement should not apply to the order of restitution in this case.... ”); United States v. Mmahat, supra; United States v. Asset, supra; United States v. Johnson, 1991 WL 131892, 1991 U.S.App. LEXIS 17204 (6th Cir.1991) (unpublished) (same); United States v. Dudley, 739 F.2d 175, 178 (4th Cir.1984) (same).[17]
3.
The majority’s decision is contrary to the general principles of federal and common law pertaining to abatement, survival, and revival of actions and judgments. With respect to a cause of action created by act of Congress, it is well settled that the question of whether it survives the death of a party by or against whom it has been brought is not one of procedure but one which depends on federal substantive law. Ex parte Schreiber (Schreiber v. Sharpless), 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884); See 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §§ 1952 & 1954 (2d ed. 1986). If no specific provision for survival is made by federal law, as in the present case, the cause survives or not according to the principles of common law. Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713 (1902); Ex parte Schreiber, supra. Generally, an action is not abated by the death of a party after the cause has reached a verdict or final judgment and while the judgment stands, 1 Am Jur 2d, Abatement, Survival and Revival § 61, n.26 (citing Connors v. Gallick, 339 F.2d 381 (6th Cir.1964); Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 ALR2d 853 (1950), et al.), even if the judgment is based on a cause of action that would not have survived had the party died before judgment. Id. § 61, n.27. (citing Mayor of City of Anniston v. Hurt, 140 Ala. 394, 37 So. 220 (1904), et al.). “So long as the judgment remains in force, the rule on survival has no further application,[ ] even where the proceedings are stayed by appeal and supersedeas.” Id., nn. 28 and 29 (citing authorities).
A restitution order issued under the MVRA has the effect of a judgment “entered in favor of such victim in the amount specified in the restitution order.”[18] It is undisputed that the defendant Parsons’s death occurred after the special verdict and restitution order were entered. Consequently, under the substantive principles *426 of federal and common law pertaining to abatement, survival and revival, the judgment of restitution survived and was not abated by the defendant’s death. Id.
4.
I respectfully concur in the result reached by the majority opinion in not ordering the government to return sums already paid. Because I would not overrule this Circuit’s precedents in Mmahat and Asset but would adhere to them, I cannot join the majority in reasons related to this point. As I read those Circuit precedents, the rule of abatement does not apply to require the return of money paid by a defendant prior to his death as forfeiture, fine or restitution. I do not join in the expungement order because I am uncertain as to whether this relief was requested or whether the estate would be entitled to it if it had been prayed for.
For the foregoing reasons, I respectfully dissent in part and specially concur in part in the majority opinion.

. The MVRA supersedes the VWPA, in part, and mandates restitution with respect to, inter alia, mail fraud crimes (such as those committed by Parsons), of which the defendant is convicted on or after the date of the MVRA’s enactment. See S. Rep. 104-179, 104th Cong., 2nd Sess. 13, reprinted in 1996 U.S.Code Cong. & Admin. News 926 (indicating that the MVRA is designed to further the purposes of the VWPA); Pub.L. No. 104-132 § 211, 110 Stat. 1241 (1996) (stating that the MVRA shall apply to convictions on or after the date of the MVRA’s enactment); 18 U.S.C. § 3663A(c)(l)(A) (listing the types of crimes to which the MVRA applies); United States v. Caldwell, 302 F.3d 399, 419 (5th Cir.2002) (holding that mail fraud is a crime to which the MVRA applies). For the reasons discussed below, I believe the MVRA is not an ex post facto law, but a compensatoiy, non-punitive remedy which applies retroactively to all such convictions regardless of the date of the commission of the crime. In any event, the policy and provisions of the MVRA should be carefully and fully considered in this major policymaking decision having broad future ramifications under the MVRA and VWPA.

. The majority argues that the restitution order under this statute should abate because, after the criminal case is abated ab initio, the defendant no longer stands "convicted.” See Majority Op. at pp. 415-417. But the language in question on its face uses the term "convicted” in the context of "when [the district court is] sentencing” the defendant. Because Parsons stood convicted during sentencing, the restitution order was issued during sentencing, and the restitution order has the effect of a civil judgment rendered at that time, see infra notes 5-11 and accompanying text, the restitution order is valid.
*421 The majority then tries to analogize to section 3664(Z), which refers to the effect of a conviction in subsequent proceedings, arguing that the term "convicted” must have the same meaning in both of these sections. But the word "convicted” has no temporal element; the temporal thrust of each section is provided by the context in which the word "convicted” or "conviction” is used. Thus, the majority’s analogy is inherently flawed.

. The defendant’s financial circumstances are relevant only to fixing a payment schedule for the mandatory restitution. 18 U.S.C. § 3 664(f)(2)-(4).

. The MVRA expressly provides that if the victim is deceased the court shall order restitution to the victim's estate. Id. § 3663(a)(1)(A); this provision implies that the right created by the restitution order is heritable property.

. Id. § 3664(g)(2).

. Id. § 3664(m)(ii)(B), which provides:
At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located, the *422 abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State.

. Id.

. Id. § 3664(h).

. Id. § 3664(Z).

. Id. § 3664(j)(l).

. Id. § 3664(b)(1).

. Id. § 3664(b)(2).

. Id. § 36640(2).

. The majority asserts that its "finality rationale .... mandates that all vestiges of the criminal proceeding should disappear." Majority Op. n.13. Because the compensato-iy/penal analysis would not result in total abatement, the majority rejects it summarily. Id.
Until the majority’s decision rejecting the compensatoiy/penal analysis, it had been adopted and used unanimously. See Mmahat, 106 F.3d 89, 93 (using the penal-compensatory dichotomy); Asset 990 F.2d at 213-14 (same); see also United States v. Christopher, 273 F.3d 294, 298-99 (3rd Cir.2001)(same); United States v. Logal, 106 F.3d 1547, 1552 (11th Cir.1997) (same); United States v. Dudley, 739 F.2d 175, 177-78 (4th Cir.1984) (same); United States v. Johnson, 1991 WL 131892, 1991 U.S.App. LEXIS 17204 (6th Cir.1991) (unpublished) (citing Dudley). By rejecting the analysis and the unanimous weight of authority, the majority opinion places this Circuit in a sui generis position of isolation.
The compensatory/punitive test is part of the well settled doctrine that death abates a criminal penalty because, once the defendant is dead, there is no longer a justification for the punishment of him or his estate; but the defendant’s death does not affect the justification for restitution intended only to compensate the victim; accordingly, such restitution survives and its payment will not undermine the purposes of abatement since the goal of the payment is not to punish the defendant, or his estate, but to restore the victim’s losses. See, e.g., Asset, 990 F.2d at 214 (citing United States v. Morton, 635 F.2d 723, 725 (8th Cir.1980); United States v. Bowler, 537 F.Supp. 933, 935 (N.D.Ill.1982)). Restitution also serves the non-penal purpose of removing benefits derived by wrongdoing from the defendant's estate, which would otherwise be unjustly enriched, and using them to repair the victim's losses. Christopher, 273 F.3d at 299, cert. denied, 536 U.S. 964, 122 S.Ct. 2674, 153 L.Ed.2d 847 (2002)("To absolve the estate [of the defendant] from refunding the fruits of the wrongdoing would grant an undeserved windfall.”)
Most important, as the text of this dissenting opinion explains, Congress in the MVRA and the VPWA has confirmed the merit of the compensatoiy/punitive test by providing that judgments of compensatory restitution for crime victims shall have the force and effect of civil judgments, which under the federal and common law do not abate but survive the death of the defendant judgment-debtor.
The majority erroneously claims that it has crafted a "consistent regime that incorporates statutory elements — such as the Victim and Witness Protection Act....” Majority Op. at 415 n.15. Instead, the majority has simply expanded the judicially created rule of ah initio abatement far beyond its original purpose to, in effect, judicially overrule the national policy and legislated law of restitution of crime victims enacted by Congress in the MVRA and VWPA.

. Some courts, without functional analysis or reasoning, treat restitution under the VWPA and MVRA as a criminal penalty. See United States v. Edwards, 162 F.3d 87, 89-90 (3rd Cir.1998) (collecting cases). They rely on formalistic classification of the restitution order as criminal because it issues during the sentencing proceeding; they fail to recognize the modem practice of using civil proceedings as ancillary to criminal actions. See Susan R. Klein, Redrawing the Criminal-Civil Boundary, 2 Buff.Crim. L.R. 679, 686-89 (1999) (noting the MVRA as an example). Though courts are authorized to issue restitution orders in criminal proceedings, restitution under the MVRA and VWPA is functionally a tort remedy-a streamlining of procedures that allows a victim to recover a compensatory remedy though "a summary proceeding ancillary to a criminal prosecution.” See Bach, 172 F.3d at 523 (citing, inter alia, Carol S. Steiker, Punishment and Procedure: Punishment Theory and the Criminal-Civil Procedural Divide, 85 Geo. L.J. 775, 782-83 (1997)).
Indeed, the acts within which the MVRA and VWPA are contained were not passed as solely criminal acts. The MVRA was simply one part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA”), which contains both criminal and civil legislation. *424 See Pub.L. 104-132, 110 Stat. 1214 (1996). For example, AEDPA contains, among other provisions, sections involving habeas corpus reform and provisions relating to civil lawsuits brought against terrorist states. Id. In addition, the VWPA is primarily a civil act providing for compensatory restitution. In other words, both the MVRA and the VWPA were passed as part of legislative enactments that created both civil and criminal reforms.

. One Circuit court concluded, with little analysis or reasoning, that restitution orders are punitive and therefore should abate when a defendant dies during his appeal. See United States v. Logal, 106 F.3d 1547 (11th Cir.1997).

. § 3664(m)(ii)(B). See note 7, supra.